David J. Adler
McCARTER & ENGLISH, LLP
825 8th Avenue
Worldwide Plaza
New York, New York 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921
E-mail: dadler@mccarter.com
*Attorneys for Ad Hoc Group of Borrowers*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.,*[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| AD HOC GROUP OF BORROWERS, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 23-_____ (MG) |
| CELSIUS NETWORK LLC; CELSIUS KEYFI LLC; CELSIUS LENDING LLC; CELSIUS MINING LLC; CESIUS NETWORK INC.; CELSIUS NETWORK LIMITED; CELSIUS NETWORKS LENDING LLC; AND CELSIUS US HOLDING LLC, | |
| Defendants. | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

The Ad Hoc Group of Borrowers (the "**Ad Hoc Group**"),[2] by and through its attorneys,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] The members of the Ad Hoc Group (collectively, the "**Borrowers**") are set forth in certain statements (the "**Rule 2019 Statements**") filed by McCarter & English, LLP (the "**McCarter Firm**") from time to time pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). On or about January 23, 2023, the McCarter Firm filed the *First Supplemental Verified Statement Pursuant to Bankruptcy Rule 2019* [ECF Doc. #

McCarter & English, LLP, files this complaint (the "**Complaint**") against the debtors and

debtors in possession (collectively, the "**Debtors**" or "**Celsius**") in the above-captioned chapter

11 cases (collectively, the "**Chapter 11 Cases**") and allege and state:

### PRELIMINARY STATEMENT[3]

1.       Prior to the Petition Date, the Debtors offered a series of crypto currency

programs, including an "earn" account and a "borrow" account.  Each account was governed by

certain agreements (collectively, the "**Account Agreements**").[4]

2.       With respect to the borrow program, a Celsius customer could become a

"borrower" by entering into an agreement with Celsius (a "**Loan Agreement**") pursuant to

which she/he would receive either fiat currency or stablecoins in exchange for posting his/her

cryptocurrency as collateral with Celsius (the "**Collateral**").[5]  When a loan was issued (the

"**Loans**"), Celsius provided the borrower with a Truth in Lending Act Statement ("**TILA**

**Statement**") which detailed the cost of the loan (principal and interest payments to be made)

under the terms of the loan. Once the Loans were repaid, the Debtors were obligated under the

Loan Agreement to release the Collateral to the Borrower.

3.       Unlike the Earn program, the Loan Agreement did not transfer title to the

cryptocurrency to Celsius.  This was explained on February 10, 2020 by Aliza Landes, then Vice

---

1920], which is the most recent Rule 2019 Statement identifying the members of the Ad Hoc Group.  Additional members continue to join the Ad Hoc Group on an ongoing basis, and the McCarter Firm will file additional Rule 2019 Statements as necessary to comply with Bankruptcy Rule 2019.

[3] Capitalized terms used but not otherwise defined in this Summary of Action have the meanings ascribed to such terms below.  References to "ECF Doc. #. ___" refer to documents filed on the main docket for the jointly administered Chapter 11 Cases under Case Number 21-10964 (MG).

[4] The Loan Agreements are set forth in the Declaration of Alex Mashinsky dated August 10, 2023 (ECF Doc. #393) and is incorporated herein by reference.

[5] "Fiat" currency refers to legal tender issued by a government that is not backed by any commodities, such as gold or silver.

ME1 44133161v.1

President of Retail Lending, who described taking a retail loan as "you're not going into debt, you're just borrowing against something you own." Celsius Network AMA – Ask Aliza Anything!, YouTube (February 10, 2020), https://www.youtube.com/watch?v=RIfECR1Ghhk

4.    Through this Complaint, the Ad Hoc Group seeks a judgment declaring that:

a.    the Collateral is not property of the estate, it should be returned to the Borrowers;

b.    the Debtors should be compelled to provide an accounting and turnover the Collateral;

c.    the Loan Agreements are consumer credit transactions under the Truth in Lending Act and are entitled to the protection afforded to such transactions under section 363(o) of title 11 of the United States Code (the "**Bankruptcy Code**");

d.    the Debtors engaged in deceptive trade practices;

e.    the Debtors committed consumer fraud;

f.    the Debtors violated consumer finance laws, licensing requirements and/or governmental regulations which render the Loans void and unenforceable;

g.    the Debtors committed fraud in the inducement and/or made certain misrepresentations to the Borrowers which render the Loans void and unenforceable;

h.    the Debtors breached the Loan Agreements; and/or

i.    the Debtors have been unjustly enriched by the Collateral.

## THE PARTIES

5.    Plaintiff, is the Ad Hoc Group, which consists of all Borrowers represented by the McCarter Firm.  The McCarter Firm periodically identifies the Borrowers it represents by filing Rule 2019 Statements.  *See* ECF Doc. # 1920, *5-11.

3

6.      The Defendants are the Debtors in the above-captioned Chapter 11 Cases.  The

Debtors' names and addresses are set forth in each of their respective voluntary petitions for

chapter 11 relief.  The corporate organization of the Debtors, as well as their jurisdictions of

formation, are set forth in **Exhibit A** to the *Declaration of Alex Mashinsky, Chief Executive*

*Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions*, filed

on July 14, 2022 (ECF Doc. # 23) (the "First Day Declaration").

## JURISDICTION AND VENUE

7.      This adversary proceeding arises in and relates to the Chapter 11 Cases pending

before the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court") under chapter 11 of the Bankruptcy Code.

8.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157 and 1334.  The adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§

157(b)(2)(A), (G), (K) and/or (O).

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory predicates for the relief requested herein are sections 105, 363 and

541 of the Bankruptcy Code and Bankruptcy Rules 7001(1) and 7001(9).

## FACTUAL ALLEGATIONS

A.      **PROCEDURAL HISTORY**

11.     On or about March 2018, the Debtors launched their "crypto asset-based finance

platform" (the "**Celsius Platform**").  ECF Doc. # 1411, p. 7.

12.     On or about June 12, 2022, the Debtors froze the ability of the Borrowers to

withdraw any funds from their accounts on the Celsius Platform.

13.     On or about July 15, 2022 (the "**Petition Date**"), each of the Debtors filed a

4

voluntary petition in relief with the Bankruptcy Court.

14. Since the Petition Date, the Debtors have continued to operate their businesses and manage their affairs as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

15. The Debtors also filed the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* (ECF Doc. # 23) (the "**Mashinsky First Day Declaration**") on the Petition Date. The Ad Hoc Group incorporates by reference the factual admissions set forth in the Mashinsky First Day Declaration as if fully set forth at length herein.

16. On or about August 8, 2022, the Debtors filed the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018* (ECF Doc. # 393) (the "**Mashinsky Declaration Regarding Account Terms**"), which purports to include true and correct copies of the Loan Agreements with the Debtors, including, without limitation, the General Terms of Use (the "**General Terms**") and the Celsius Loan Terms and Conditions (the "**Loan Terms**") as **Exhibits A** and **B**, respectively. The Ad Hoc Group incorporates by reference the terms of the Loan Terms and other factual admissions set forth in the Mashinsky Declaration Regarding Account Terms as if fully set forth at length herein.

17. On September 14, 2022, the Bankruptcy Court held a hearing and entered the *Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* (ECF Doc. # 820) (the "**Order Appointing Examiner**"). The Ad Hoc Group incorporates by reference the Order Appointing Examiner, as well as all statements and admissions made during the presentation of the Order Appointing Examiner to the Court at the hearing on

5

September 14, 2022, as if fully set forth at length herein.

18.    On September 29, 2022, the Bankruptcy Court entered the *Order Approving the Appointment of Chapter 11 Examiner*, which appointed Shoba Pillay (the "**Examiner**") as the Chapter 11 Examiner of the Debtors' bankruptcy estates.  ECF Doc. #  923.

19.    On November 19, 2022, the Examiner issued the *Interim Report of Shoba Pillay, Examiner* (ECF Doc. # 1411) (the "**Interim Examiner Report**").  The Ad Hoc Group incorporates by reference all statements contained in the Interim Examiner Report as if fully set forth at length herein.

20.    On January 4, 2023, the Bankruptcy Court filed the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* (ECF Doc. # 1822) (the "**Opinion Regarding Ownership of Earn Accounts**").  The Ad Hoc Group incorporates by reference all legal and factual findings articulated in the Opinion Regarding Ownership of Earn Accounts and the hearing held in connection therewith as if fully set forth at length herein.

21.    On January 31, 2023, the Examiner issued the *Final Report of Shoba Pillay, Examiner* (ECF Doc. # 1956) (the "**Final Examiner's Report**").  The Ad Hoc Group incorporates by reference all statements contained in the Final Examiner's Report as if fully set forth at length herein.

**B.    FACTUAL HISTORY**

22.    Through the Celsius Platform, the Debtors provided financial services and generated revenue through, among other things, cryptocurrency trading, lending and borrowing, as well as by engaging in proprietary trading.

23.    As of the Petition Date, the Debtors offered three types of deposit accounts on the Celsius Platform: 1) an Earn Account; 2) a Custody Account; and 3) a Withhold Account

6

(collectively, the "**Deposit Accounts**").  ECF Doc. # 1141, pp. 7-13.

24.     The Debtors also offered a borrow program to their customers which allowed Borrowers to post cryptocurrency assets as security in exchange for a loan in fiat currency or stablecoin.

25.     Prior to the Petition Date, each of the Borrowers entered into the Loan Agreements with the Debtors.

26.     Upon information and belief, "[a]s of July 13, 2022, Lending had approximately 23,000 outstanding loans to retail borrowers in the aggregate amount of approximately $411 million backed by Collateral with a market value of approximately $765.5 million in digital assets." *See* ECF Doc. # 23, ¶ 55.

27.     Celsius promoted and advertised its services, using social media.  In particular, Mr. Alex Mashinsky would host weekly AMAs (Ask Mashinsky Anything) ("**AMAs**") on youtube.com.[6]  The AMAs are replete with repeated misrepresentations concerning the financial stability of Celsius, the risks associated with depositing cryptocurrency at Celsius,  its regulatory compliance, its transparency and ownership of the cryptocurrency assets, including the ownership of the Collateral on the Celsius Platform.

28.     Among other things, the following false representations were made during the AMAs:

### A.  Representations concerning Regulation Compliance

- On October 10, 2020, Mashinsky replied to a tweet: "We are ready for all outcomes. We registered with the SEC in 2018 so we won't have the issues others have."

- During a media interview in December 2020, Mashinsky stated, "Celsius from day one, one of the first things we did . . . was register with the SEC . . . ."

---

[6] Celsius has hundreds of these marketing videos on its Youtube.com channel.  *See* https://www.youtube.com/@CelsiusNetwork/videos

- In December 2021, Mashinsky was quoted in Barron's as stating, "The regulators looked into us and said these guys know what they're doing."

- In an AMA from December 3, 2021, Mashinsky represented that "states and other regulators have looked into Celsius, they all came back thumbs up, there's no problem, we didn't find anything…."

### B.  Representations concerning The Safety Of Its Business Model

- [t]he Celsius business model is structured to do the exact opposite of what banks do — by giving 80% of total revenue back to our community each week in the form of earned interest. We earn profits by lending coins to hedge funds, exchanges, and institutional traders, and by issuing asset backed loans at an average of 9% interest.

- Mashinsky publicly claimed in an April 22, 2022 AMA that "what Celsius does best, better than anybody else, is go out to market and earn yield on these assets."

- Mashinsky claimed on April 13, 2022 "[o]n the institutional side, we have very credible counterparties that have billions of dollars on their balance sheet and for those, we have undercollateralized but we don't offer any non-collateralized loans."

### C.  Representations concerning Celsius' Financial Stability

- A run on the bank cannot happen at Celsius because Celsius never lends more than what it has …we always have enough coins and enough collateral and so on to return all the assets to all of our users. Celsius, Expansion in Asia with Special Guest Lennis Lai (OkEx) - Celsius AMA, YouTube (April 30, 2021), https://www.youtube.com/watch?v=LaIfR4BuIno.

- Celsius takes full responsibility if anything goes bad we take full responsibility that's part of why we raised it 750 million and now we have over two billion dollars on our balance sheet again more than anybody else." Celsius AMA 10th December 2021, YouTube (December 10, 2021), https://www.youtube.com/watch?v=X304U3isWzg.

### D.  Representations concerning Bankruptcy of Celsius

- On March 25, 2021, Mashinsky, posted on Twitter, in reply to a Twitter user who asked what would happen to their coins in the event of Celsius's bankruptcy, that "all coins are returned to their owners even in the case of bankruptcy."

8



### E.  Representations concerning Ownership of Cryptocurrency

- In a November 26, 2019 AMA, Mr. Mashinsky stated "[t]hese are your coins, not our coins. Whatever you put in, if you put in one Bitcoin, you will be withdrawing one Bitcoin . . . It's always your Bitcoin. Always your Ether. Always your CEL Token." https://www.youtube.com/watch?v=H1n5g7uJyvQ

- On February 10, 2020, Aliza Landes, the Vice President of Retail Lending, described taking a retail loan as "you're not going into debt, you're just borrowing against something you own." Celsius, Celsius Network AMA – Ask Aliza Anything!, YouTube (February 10, 2020), https://www.youtube.com/watch?v=RIfECR1Ghhk

- On July 24, 2020, Mr. Mashinsky stated:
  [W]hen you give us bitcoin it's not like it's ours, right? It's yours legally. It is still your bitcoin. The only thing we do is when you lend us your bitcoin, we lend them to people who pay us interest. When they return them, it goes back to the wallet and it's still yours from that wallet.  Celsius Network AMA with Alex Mashinsky and HFN's Roni Cohen-Pavon, YouTube (July 24, 2020), https://www.youtube.com/watch?v=kC-89USzxaM.

29.     As detailed at length in the Final Examiner's Report, Celsius knew that the

representations identified above were false.   *See* Examiner's Report, Part II, Article VI,G at pp.

256-67 entitled "*Celsius did not Correct Its Misleading and Inaccurate Statements*" ("the

Examiner found **no** evidence that anyone at Celsius suggested or executed on a process of

correcting or retracting inaccurate and misleading statements that Celsius's employees identified

and removed (or attempted to remove) between May 2021 and June 2022.")(emphasis supplied).

9

30.     In reasonable reliance upon the Debtors' misrepresentations, each Borrower entered into a Loan Agreement in exchange for pledging their collateral to Celsius.

31.     The Debtors agreed to return the Collateral to the Borrowers' Deposit Accounts, once the Loans were repaid.  *See*, ECF Doc # 393, at pp. 684, 698, 729, 760, 793, 827, 861 and 896 ("Within ten (10) days of your full repayment of the [outstanding Loan Amount or Principal amount and all outstanding Obligations], Celsius shall release all remaining collateral to your Celsius Account.").

32.     The Debtors' obligation to return the Collateral to the Borrowers did not vary based on whether the account of the Borrower.   Instead, the Loan Terms define "Account" as "your account with Celsius set up and maintained pursuant to the Network Terms."  ECF Doc. # 393, at pp. 681, 695, 726, 757, 790, 824, 858 and 892.  Similarly, the General Terms define the phrase "Celsius Account" as "a User's designated user account on the Celsius website or mobile application…"  ECF Doc. # 393, at pp. 274, 401 and 526.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) that Collateral is Not Property of the Estate)

33.     The Ad Hoc Group repeats and realleges each of the foregoing paragraphs as if fully set forth at length herein.

34.     The Collateral is not property of the Debtors' estates.

35.     The Loan Agreements did not transfer title to Celsius.  Rather, under the Loan Agreement, the Borrowers consented to Celsius's use of the Collateral during the loan period.

36.     The Debtors repeatedly represented that the Collateral was the property of the Borrower.

37.     For example, during weekly livestream conversations, the Debtors' co-founder

10

and majority owner, Alex Mashinsky, repeatedly represented to each of the Borrowers that the Collateral "are your coins, not our coins." ECF Doc. # 1956, p. 10.

38.    Based on the foregoing and the facts incorporated herein by reference, the Ad Hoc Group is entitled to a judgment declaring that the Collateral is not property of the Debtors' bankruptcy estates pursuant to section 541(d) of the Bankruptcy Code.

## SECOND CLAIM FOR RELIEF
### (Accounting and Turnover of Collateral)

39.    The Ad Hoc Group repeats and realleges each of the foregoing paragraphs as if fully set forth at length herein.

40.    To the extent the Debtors hold any interest in the Collateral, such interest is limited to the outstanding balance of the Borrowers' Loans with the Debtors.

41.    The Loan Terms make clear that the Debtors only hold possession, not ownership, of the Collateral.  ECF Doc. #  393, pp. 736, 768, 801, 835, 869 and 886 (Debtors "shall have actual possession of, and a first priority security interest in the collateral" only).

42.    As a pledgee or a secured lienholder, the Debtors do not own the Collateral.

43.    Based on the foregoing and the facts incorporated herein by reference, the Ad Hoc Group is entitled to a judgment compelling the Debtors to provide an accounting and turnover of the Collateral.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) that the Loans are Entitled to the Protections under 11 U.S.C § 363(o))

44.    The Ad Hoc Group repeats and realleges each of the foregoing paragraphs as if fully set forth at length herein.

45.    The Borrowers are consumers.

46.    The Debtors extended the Loans to consumer Borrowers primarily for personal,

11

family or household purposes.

47.    In connection with the Loans, the Borrowers were provided with TILA

Statements.

48.    Based on the foregoing and the facts incorporated herein by reference, the Loans

constitute consumer credit transactions and are entitled to the protections under Section 363(o) of

the Bankruptcy Code.

## FOURTH CLAIM FOR RELIEF
### (Deceptive Trade Practices)

49.    The Ad Hoc Group repeats and realleges each of the foregoing paragraphs as if

fully set forth at length herein.

50.    Each of the Debtors is a person.

51.    Each of the Debtors misrepresented material facts concerning the transfer of the

Collateral to the Celsius Platform.

52.    As set forth above, the Debtors' co-founder and majority owner, Alex Mashinsky,

repeatedly represented to each of the Borrowers that the Collateral "are your coins, not our

coins."  ECF Doc. # 1956, p. 10.

53.    The Debtors also represented that they would only possess, not own, the

Collateral once such assets were transferred to the Celsius Platform for the loan program.  ECF

Doc. # 393, pp. 736, 768, 801, 835, 869 and 886 (Debtors "shall have actual possession of, and a

first priority security interest in the Collateral" only); *see also* ECF Doc. # 393, pp. 690 705-06,

903 (identifying Debtors' rights as "pledgee").

54.    The Debtors further made false and misleading claims as set forth above and

detailed in the Final Examiner's Report.   Among other things, those false and misleading claims

related to:

12

a.      their financial health;

b.      their compliance with applicable laws and regulations;

c.      their ability to meet obligations;

d.      their ability to safeguard customer assets; and

e.      their revenue sources; and

f.      the price of the CEL token.

55.     The Debtors engaged in deceptive trade practices by, among other things: (1) advertising goods or services with intent not to sell them as advertised; and (2) engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding, including, without limitation, the Debtors' purported rights regarding the Collateral.

56.     As a direct and proximate result of these deceptive trade practices, the Borrowers suffered harm, including monetary damages, attorneys' fees and litigation costs.

<u>**FIFTH CLAIM FOR RELIEF**</u>
**(Consumer Fraud)**

57.     The Ad Hoc Group repeats and realleges each of the foregoing paragraphs as if fully set forth at length herein.

58.     Each of the Debtors is a person.

59.     Each of the Borrowers is a consumer

60.     Each of the Debtors misrepresented material facts concerning the "borrow" program and the borrower's rights in the Collateral.

61.     For example, during weekly livestream conversations, the Debtors' co-founder and majority owner, Alex Mashinsky, repeatedly represented to each of the Borrowers that the Collateral "are your coins, not our coins."  ECF Doc. # 1956, p. 10.

62.     The Debtors also represented that they would only possess, not own, the

13

Collateral once such assets were transferred to the Celsius Platform for the loan program.  ECF

Doc.# 393, pp. 736, 768, 801, 835, 869 and 886 (Debtors "shall have actual possession of, and a

first priority security interest in the Collateral" only); *see also* ECF Doc. # 393, pp. 690 705-06,

903 (identifying Debtors' rights as "pledgee").

63.    The Debtors engaged in unlawful practices (i.e. consumer fraud) by, among other

things misrepresenting, deceiving, fraudulently stating, fraudulently promising, unfairly

endorsing, suppressing or concealing material facts concerning Celsius and the "borrow"

program, including, without limitation, false and misleading claims as detailed in the Examiner's

Report concerning, *inter alia*:

    a.  the Debtors' financial health;

    b.  the Debtors' compliance with applicable laws and regulations;

    c.  the Debtors' ability to meet obligations;

    d.  the Debtors' ability to safeguard customer assets; and

    e.  the Debtors' revenue sources; and

    f.  the price of the CEL token.

64.    The Debtors made these misrepresentations of material facts and/or actively

concealed these material facts in connection with inducing consumers to open or maintain

accounts on the Celsius Platform.

65.    The Debtors made these misrepresentations with the intent of inducing reasonable

consumers, such as the Borrowers, to rely on such misrepresentations.

66.    The Borrowers reasonably relied upon the Debtors' misrepresentations, to their

detriment.

67.    As a direct and proximate result of these unlawful practices, the Borrowers

ME1 44133161v.1

suffered harm, including monetary damages, attorneys' fees and the costs of litigation.

## SIXTH CLAIM FOR RELIEF
### (Unlawful Provision of Money Services)

68.    The Ad Hoc Group repeats and realleges each of the foregoing paragraphs as if fully set forth at length herein.

69.    The Debtors advertised and held themselves out as providing money services through, among other things, websites such as https://celsius.network.com.

70.    The Debtors engaged in the business of money transmission.

71.    The Debtors offered and originated Loans without required money transmitter licenses from state and federal authorities.

72.    The Borrowers are natural people.

73.    The Debtors qualify as financial institutions by the nature of their business.

74.    The Borrowers established Deposit Accounts on the Celsius Platform for personal, family or household purposes.

75.    The Borrowers transferred funds into their respective Deposit Accounts through an electronic terminal or computer.

76.    The Borrowers properly instructed the Debtors to transfer funds from their respective Deposit Accounts through an electronic terminal or computer.

77.    Upon information and belief, the Debtors failed to honor any requests to withdraw funds from the Deposit Accounts on or after June 12, 2022.

78.    The Debtors willfully violated federal and state money transmitter laws.

## SEVENTH CLAIM FOR RELIEF
### (Fraudulent Misrepresentations)

79.    The Ad Hoc Group repeats and realleges each of the foregoing paragraphs as if

ME1 44133161v.1

fully set forth at length herein.

80.    The Debtors had a duty to communicate information to the Borrowers in an accurate and truthful manner.

81.    As detailed in the Final Examiner's Report, the Debtors made factual representations to the Borrowers regarding the Celsius Platform and their respective accounts thereon, including, without limitation, false and misleading claims about, *inter alia*:

      a.  the Debtors' financial health;

      b.  the Debtors' compliance with applicable laws and regulations;

      c.  the Debtors' ability to meet obligations;

      d.  the Debtors' ability to safeguard customer assets;

      e.  the Debtors' revenue sources; and

      f.  the price of the CEL token.

82.    Each of these representations were material to the Borrowers' decision to transfer the Collateral to the Celsius Platform.

83.    Each of the Debtors' representations of material fact were false, as the Debtors intentionally and knowingly mischaracterized how the Collateral would be handled on the Celsius Platform, among other things.

84.    The Debtors:

      a.   knew that their representations of material fact were false and misleading at the time that they represented the information to the Borrowers

      b.  misrepresented the material facts with reckless indifference to their truth; and/or

      c.  should have known that their representations of material facts were false and

ME1 44133161v.1

misleading at the time that they represented the information to the Borrowers.

85.     The Debtors intentionally communicated the inaccurate information to the

Borrowers for the purpose of inducing the Borrowers to rely on those misrepresentations.

86.     The Borrowers justifiably relied upon the Debtors' misrepresentations of material

facts to their detriment.

87.     The Borrowers' reliance on the Debtors' misrepresentations of material fact was

reasonable.

88.     But for the Debtors' fraudulent representations, the Borrowers would not have

entered the Loan Agreements.

89.     As a direct and proximate result of the Debtors' misrepresentations of material

fact, the Borrowers suffered harm, including, but not limited to, monetary damages totaling not

less than the value of the Collateral.

## EIGHTH  CLAIM FOR RELIEF
### (Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9)
### that the Loan Agreements are not Enforceable)

90.     The Ad Hoc Group repeats and realleges each of the foregoing paragraphs as if

fully set forth at length herein.

91.     The Borrowers are individual consumers.

92.     The Borrowers' Loans are consumer loans.

93.     The Debtors did not hold the required licenses from the appropriate state and

federal agencies to engage in the business of making consumer loans.

94.     The Debtors failed to comply with the state and federal regulations regarding

disclosure concerning the terms of the Borrowers' Loans with the Debtors.

95.     The Debtors breached the Loan Agreements by, among other things, engaging in

ME1 44133161v.1

the fraudulent conduct described above and as detailed in the Final Examiner's Report.

96.     The Debtors repeatedly misrepresented information to the Borrowers, including, without limitation, how Celsius would treat the Collateral on its platform.

97.     The Debtors knowingly misrepresented facts to the Borrowers to induce the borrowers to enter the Loan Agreements.

98.     But for the Debtors' conduct, the Borrowers would not have entered into the Loan Agreements.

99.     As a result of the Debtors' conduct and in accordance with various consumer protection statutes, the Borrowers' Loans are void and unenforceable.

**NINTH CLAIM FOR RELIEF**
**(Declaratory Judgment that the Loans are Void and**
**Unenforceable Due to Fraudulent Inducement)**

100.     The Ad Hoc Group repeats and realleges each of the foregoing paragraphs as if fully set forth at length herein.

101.     As set forth in the Final Examiner's Report, the Debtors made numerous representations concerning the Debtors' financial health, the Debtors' compliance with applicable laws and regulations, the Debtors' ability to meet obligations, the Debtors' ability to safeguard customer assets and the Debtors' revenue sources.

102.     Those representations were false.

103.     As detailed in the Final Examiner's Report, the Debtors were aware of the falsity of these statements.

104.     The Borrowers reasonably relied upon the Debtors' fraudulent misrepresentations when entering into the Loan Agreements.

105.     The Borrowers have been harmed by the Debtors' unlawful, unfair, fraudulent

ME1 44133161v.1

and unconscionable behavior.

106.    As a result, the Borrowers are entitled to have the Loan Agreements rescinded.

## TENTH CLAIM FOR RELIEF
### (Breach of Contract)

107.    The Ad Hoc Group repeats and realleges each of the foregoing paragraphs as if fully set forth at length herein.

108.    To the extent that the Loan Agreements constitute binding contracts, the Debtors were obligated to fulfill both the express and implied terms thereof.

109.    The Debtors materially breached the express and implied terms of the Loan Agreements by, among other things, misrepresenting how the Collateral would be treated by the Debtors on the Celsius Platform.

110.    Additionally, since at least June 12, 2022, the Debtors have prevented the Borrowers from recovering their Collateral, even though the Loan Terms provide, "[b]oth you and/or Celsius may, for any or no reason, terminate the Loan within thirty (30) days prior notice in writing to the other party.".ECF Doc. # 323, p. 895.

111.    Had the Debtors permitted the Borrowers to repay or refinance their Loans, then each of the Borrowers would have been entitled to the release of their Collateral.  ECF Doc. # 323, p. 896.

112.    As a result of the Debtors' material breaches of the Loan Agreements, the Borrowers suffered significant harms, including, but not limited to, monetary damages in an amount not less than the value of the , attorneys' fees and litigation costs.

## ELEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment)

113.    The Ad Hoc Group repeats and realleges each of the foregoing paragraphs as if

ME1 44133161v.1

fully set forth at length herein.

114.    To the extent that the Collateral is property of the Debtors' bankruptcy estates, the Debtors' bankruptcy estates have been unjustly enriched.

115.    The Debtors repeatedly represented that the Collateral was the property of the Borrowers.

116.    In reliance on the Debtors' representations, the Borrowers transferred the Collateral onto the Celsius Platform.

117.    To the extent the Collateral is determined to be property of the Debtors' bankruptcy estates, the transfers of the Collateral to the Debtors enriched the Debtors' bankruptcy estates by the value of the Collateral.

118.    To the extent the Borrowers cannot withdraw the Collateral from Celsius, the transfers of the Collateral impoverished the Borrowers by the value of the Collateral.

119.    It is inequitable and unjust to permit the Debtors' bankruptcy estates to continue to retain the Collateral.

ME1 44133161v.1

## <u>CONCLUSION</u>

**WHEREFORE,** the Borrowers respectfully requests that this Court enter judgment and award damages against the Debtors, plus pre-judgment interest, post-judgment interest, attorneys' fees and costs of this litigation.

Dated:  February 7, 2023

**McCARTER & ENGLISH, LLP**

By:    */s/ David J. Adler*
     David J. Adler
     (A member of the Firm)
     Email: dadler@mccarter.com
     825 8th Avenue
     Worldwide Plaza
     New York, New York 10019
     Telephone: (212) 609-6847
     Facsimile: (212) 609-6921
     *Attorneys for Ad Hoc Group of Borrowers*

ME1 44133161v.1